# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Re Incorporation of the Borough of Taylorport.

Where it is doubtful whether a majority of the freeholders residing within the proposed limits of a borough have signed the petition of incorporation the court of quarter sessions has no jurisdiction to entertain the petition or to take any further steps in the proceeding.

In such a case the court, having lost its jurisdiction, could not cure the difficulty by reducing the proportions of the territory so that there was a majority of those that were left whose names were on the petition.

(Argued February 23, 1888. Decided March 19, 1888.)

January Term, 1888, No. 96, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Certiorari to the Quarter Sessions of Lackawanna County to review a decree incorporating the borough of Taylorport, June sessions, 1886, No. 91. Reversed.

June 7, 1886, a petition was presented to the quarter sessions of Lackawanna county for the incorporation of the borough of

NOTE.—The petitioners for a borough must be a majority of the freeholders. *Re* Little Meadows, 28 Pa. 256; *Re* Springtown, 17 Pa. Co. Ct. 529; *Re* Taylor, 160 Pa. 475, 28 Atl. 934. In estimating the number no regard is had to sex. *Re* Akron, 16 Pa. Co. Ct. 252, 12 Lanc. L. Rev. 172. It must further appear from the record that the signatures were affixed within three months. *Re* Versailles, 159 Pa. 43, 28 Atl. 230; *Re* Osborne, 101 Pa. 284. After the court has received the petition, names cannot be withdrawn. *Re* Flemington, 168 Pa. 629, 32 Atl. 86; *Re* Tullytown, 1 Pa. Dist. R. 292, 11 Pa. Co. Ct. 97.

Taylorport. It was referred to the grand jury, who returned it with their approval.

Exceptions to the report of the grand jury were filed by the Delaware, Lackawanna, & Western Railroad Company, and other owners of farm lands lying within the proposed limits of the borough. These exceptions were as follows:

1. The petition is not signed by a majority of the freeholders residing within the proposed borough, and the court has no jurisdiction to grant the incorporation.

2. The boundaries of the proposed borough include about 2,000 acres of land belonging to the first-named exceptants, which is used for farming purposes; and said farming land does not comprise any village or collection of houses.

3. That including such farming land within the proposed borough will add very heavily to their taxes and will confer no additional benefit.

4. That the village of Taylorville is a small, compact settlement along the river; and yet the proposed borough is laid out to extend $2\frac{1}{4}$ miles up and down the river, and over 1 mile back from the same; and the limits are unnecessary for the accommodation of the village, and excessive and burdensome to the owners of farming land included within it.

On these exceptions the court, HAND, P. J., filed the following opinion:

There are three main exceptions which need consideration in disposing of the question of incorporation of this borough. The first is that there is not a majority of the freeholders on the petitions, residing within the limits of the proposed borough. The second is that it includes a large amount of farming lands. The third that the borough is not necessary.

In regard to the first there would appear to be at least some doubt, the difference in the count being so slight that the change of two or three names would change the result; and as to these there is some conflict. The second exception is sustained. It is clear that the law never contemplated so much farming and wood land as a part of a borough. The map shows territory proposed for the borough over 2 miles in one direction and nearly that in another, with small communities widely separated from each other. The law, however, permits us to exclude all unnecessary land from the limits of the borough.

In regard to the third exception we find that the borough is a necessity within proper limits. We also find by excluding the farm lands not properly included it leaves a majority of the petitioners within the proposed limits. We therefore make the following preliminary decision in the case:

We will exclude so much of the farm lands as does not include plot number 1, plot number 2, and the Feltzville settlement; and will direct that a line be run at and along the Shultz road, which we understand does not now extend across the proposed borough, and that this line be extended by a course which will connect the end of the Shultz road with the northerly line of the proposed borough. Our judgment is, from the maps before us, that this extension should be in the same course running northerly as the Shultz road until it reaches the line of the Aaron Feltz lot, and then should run at a right-angle course to the side line of the lot until it reaches the proposed borough line on the northerly side. This will do less violence to the town plots already adopted by Mr. Feltz. Of this we can judge after hearing the report of the surveyor. For the purpose of deciding the matter intelligently we appoint J. H. Rittenhouse, Esq., surveyor, a commissioner to run this line and prepare a separate draft embodying the other lines of the proposed borough with this new line, in order that we may make a proper and final decree.

The court subsequently entered a final decree, incorporating the borough according to the reduced limits.

The assignments of error specified, *inter alia,* the action of the court: (1) In not sustaining the first exception of the exceptants; (2) in making the order reducing the limits of the proposed borough; (3) in incorporating a district over 2 miles long, containing four farms outside of "small communities widely separated from each other;" and (4) in deciding, "We also find that by excluding the farm lands not properly included it leaves a majority of the petitioners within the proposed limits."

*Jessups & Hand,* for exceptants, appellants.—Under the act of 1834, to give the quarter sessions jurisdiction it must affirmatively appear upon the record: (1) That a majority of the freeholders resident within the proposed limits have signed the petition (*Re* Little Meadows, 28 Pa. 256); and (2) that the proposed limits comprise a village and not a tract of uncultivated or farming lands. Ibid., and 25 Pa. 335.

The act of 1871, P. L. 273, requires in addition: (1) That the application shall be laid before the grand jury at same term of court when presented, or not later than the next subsequent term; (2) that it be signed by the petitioners within the three months preceding its presentation; and (3) that public notice of the intended application for a borough be given.    Re Osborne, 101 Pa. 284.

In this case we claim that it does not affirmatively appear that a majority of the freeholders resident within the proposed limits signed the petition for the borough.

The court admitted that a majority of the freeholders resident within the proposed limits had not signed the petition, but sought to acquire jurisdiction by reducing the proposed limits, so as to exclude sufficient nonsigning resident freeholders to answer the statutory requirements.    This could not be done.

When a court has jurisdiction it has a right to decide any question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is binding in every other court.    But if it act without authority, its judgments and orders are nullities.    Elliott v. Peirsol, 1 Pet. 328, 340, 7 L. ed. 164, 170; Youngman v. Elmira & W. R. Co. 65 Pa. 286.

Where a court has obtained jurisdiction by reason of a particular subject-matter being involved, it may go on to decide other matters which of themselves would not afford ground for the original exercise of jurisdiction.    Brooks v. Stolley, 3 McLean, 523, Fed. Cas. No. 1,962; Hepburn v. Dunlop, 1 Wheat. 179, 4 L. ed. 65; Livingston v. Van Ingen, 1 Paine, 45, Fed. Cas. No. 8,420.

*Fred W. Gunster* and *Chas. H. Welles,* for petitioners, appellees.—Whether or not a majority of the freeholders residing in the proposed borough signed the petition is a question of fact, and is not the subject of review here on certiorari to the quarter sessions.    Re Quakertown, 3 Grant, Cas. 203; Kirk's Appeal, 28 Pa. 185; Re Spring Garden Road, 43 Pa. 144.

The statutes vest the discretion in the grand jury and courts of quarter sessions to determine all questions of fact and expediency in a proceeding to incorporate a town or village.    An appeal does not lie from the decree of the quarter sessions. Rhoad's Appeal, 101 Pa. 284.    See also Re Quakertown, 3

Grant, Cas. 203; *Re* Sewickley, 36 Pa. 80; *Re* Blooming Valley, 56 Pa. 66.

OPINION BY MR. JUSTICE GREEN:

The first exception to the report of the grand jury was that "the petition is not signed by a majority of the freeholders residing within the proposed borough, and the court has no jurisdiction to grant the incorporation."

The court below having investigated the several exceptions makes this disposition of the first: "In regard to the first there would appear to be at least some doubt, the difference in the count being so slight that the change of two or three names would change the result; and as to these there is some conflict."

We are clearly of opinion that this finding of fact in regard to the first exception deprives the court of all jurisdiction to entertain the petition or to take any further steps in the proceeding. The jurisdiction to grant incorporation to a proposed borough may not be exercised in a case which is doubtful as to the fundamental question whether a majority of the freeholders residing within the proposed limits have signed the petition. If it be doubtful whether a majority have signed, it certainly does not appear that a majority have in point of fact signed. But unless a majority have signed there is no jurisdiction to entertain the petition.

There is nothing on the record after the contest upon this question arose which establishes that there was a majority of freeholders who signed the petition, and this defect, in view of the distinct finding by the court that there was doubt upon that vital subject, is fatal to the proceeding. The court proceeded to cure the difficulty by reducing the proportions of the territory so that there was a majority of those that were left, whose names were on the petition. But the court, having lost its jurisdiction, had no power to make such an order; and hence it was of no effect.

The order of the court below is reversed; the petition and all proceedings are dismissed and set aside, and record remitted, at the cost of the petitioners.